UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIDEL FLORENTINA B.A.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br><br>Respondents. | No. 1:26-cv-07596-TLN-SCR<br><br>A# 241-857-955<br><br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Maridel Florentina B.A.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner entered the United States on or about July 26, 2022, without inspection. (ECF No. 8-1 at 2.) Petitioner was subsequently detained by immigration authorities but was released into the United States. (*Id.* at 3; ECF No. 10 at 3.) In the time that followed, Petitioner built a life in the United States. (ECF No. 1 at 26–30.) Petitioner submits letters of support from family and friends. (*Id.*) Petitioner has no criminal history. (ECF No. 10 at 3.)

On July 21, 2025, Petitioner was detained by immigrations authorities after reporting to a United States Immigration and Customs Enforcement office in Fresno, CA. (*Id.* at 2.) She was eventually transferred to the California City Immigration Processing Center. (ECF No. 1 at 1.)

Petitioner was not subject to an order of removal at the time of her arrest. Nearly seven months later, on February 22, 2026, an immigration judge ordered Petitioner removed and granted the United States Department of Homeland Security's motion to pretermit Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture.[2] (ECF No. 8-3 at 7–8.) Petitioner has appealed the order, and the appeal remains pending, thus, the order is not final. (*Id.*)

Petitioner filed the instant Petition on September 18, 2026. (ECF No. 1 at 1.) Petitioner challenges the lawfulness of her civil detention and seeks immediate release. (*Id.* at 6)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

2 *See* Automated Case Information, Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited October 20, 2026).

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims her detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 6.) In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"). (ECF No. 8 at 1.) They acknowledge however that the Ninth Circuit holds Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("§ 1226(a)"), and she is eligible for a custody determination hearing. (*Id.*) Respondents claim Petitioner will obtain a custody redetermination hearing upon request. (*Id.*)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals

who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in her continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on conditions was an "implicit promise" that she would not be re-detained during the pendency of her immigration proceedings if she abided by the terms of her release. *Morrissey*, 408 U.S. at 482. Respondents do not claim, and there is nothing on the record to suggest that Petitioner violated any of the terms of her release. Petitioner has lived in the United States for several years, during which time she pursued immigration relief. The amount of time Petitioner spent released in this country and the life she built in that time create a powerful interest for Petitioner in her continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(2). As Respondents acknowledge, the Ninth Circuit has confirmed the government's interpretation of the statute is incorrect. *Rodriguez Vazquez*, 2026 WL 2196424 at *3. The mandatory detention scheme of § 1225(b)(2) applies only to noncitizens entering the United States at the border. *Id.* at *10. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under § 1226(a). *Id.* at *3. Accordingly, the Court finds Petitioner maintains a clear interest in her continued liberty protected by the Due Process Clause.

B. <u>Process Required</u>

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors

support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in her own liberty that is unquestionably affected by the government's actions detaining her. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for her detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, at the time of her arrest, Petitioner was not subject to a final order of removal.[3] Respondents do not claim that she is a danger to the community or a flight risk. She has no criminal history. Without any showing by Respondents of a legitimate interest in detaining Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of her liberty interest. Without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high. *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025).

Finally, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL

---

[3] The fact that there is now a order of removal for Petitioner does not alter this Court's finding. The order is not final because Petitioner has appealed. Additionally, a constitutional claim does not evaporate with a shifting statutory basis for detention authority. *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).

1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents. Indeed, they are the very processes required under 8 U.S.C. § 1226(a) and its implementing regulations. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was owed notice and a hearing before a neutral decisionmaker to determine whether her detention was justified "at a meaningful time and in a meaningful manner." 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Failing to do so, Respondents have violated the Fifth Amendment Due Process Clause in Petitioner's detention. The appropriate remedy for this violation of Petitioner's constitutional rights is immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release." (citing *Hamdi*, 542 U.S. at 536)).

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Maridel Florentina B.A. (A# 241-857-955) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. **Respondents must file a notice certifying compliance with this provision within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government shows by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872

F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), Motion to Appoint Counsel (ECF No. 3), and Motion to Expedite (ECF No. 4) are DENIED as moot.

4. **The Clerk of Court is directed to serve California City Immigration Processing Center with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

**DATED: October 22, 2026**

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE